

**ORDERED in the Southern District of Florida on April 7, 2017.**

**Raymond B. Ray, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

GLOBAL ENERGIES, LLC,                                     Case No. 10-28935-RBR
                                                          Chapter 7

      Debtor(s).

_____/

JOSEPH G WORTLEY,

      Plaintiff(s),

v.                                                        Adv. Proc. No. 15-01447-RBR

RICHARD TARRANT et al.,

      Defendant(s).

_____/

<u>**ORDER DENYING PLAINTIFF'S MOTION FOR INTERIM AWARD [D.E. 187]**</u>

      THIS MATTER came before the Court for a hearing on March 14, 2017, upon the Plaintiff's

*Motion for Interim Award of the Remaining Funds Held by the Trustee as Partial Payment of Wortley's*

*Attorney's Fees and Costs* [D.E. 187][1] (the "Motion"). Plaintiff filed the Motion [D.E. 187] seeking a distribution of the remaining cash on hand in the bankruptcy estate – $163,752.12 – as an interim award of Plaintiff's attorneys' fees.  The Court having reviewed the Motion, court file, and being otherwise duly advised, the Court finds that an interim award of attorney's fees is improper because the issue of entitlement to attorney's fees has not been decided by any court, and a premature disbursement from property of the estate would violate § 726 of the Bankruptcy Code.

Throughout this case, Plaintiff has continuously claimed that the Eleventh Circuit Court of Appeals "unequivocally" decided the issues of entitlement to attorney's fees, and the only issue remaining was the amount to which Plaintiff is entitled. [D.E. 187 at ¶1, 18, 21; 174 at 6-11; 178 at ¶12, 14]. Upon further review of the Eleventh Circuit's orders, this Court found that the Eleventh Circuit denied Plaintiff's *Motion for Award of Appellate Attorneys' Fees and Remand for Determination of Amount* and transferred these issues to this Court for determination, pursuant to 11th Cir. R. 39-2(d). *Wortley v. Chrispus Venture Capital, LLC (In re Global Energies, LLC)*, No. 13-11666-CC, slip op. at 2 (11th Cir. Jan. 12, 2015) (transferring "the issues of [Plaintiff's] statutory entitlement to appellate attorney's fees incurred in [the appellate case] and the reasonable amount, if any, to be awarded"). Because these "issues [were] not disposed of on appeal," this Court is "free to address [them] as a matter of first impression." *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985) (citing *Holcomb v. United States*, 622 F.2d 937, 940 (7th Cir. 1980)). The Court intends to rule on the following issues pertaining to Plaintiff's claim for attorney's fees at the upcoming trial[2]:

---

[1] All references to docket entry numbers refer to the adversary proceeding, case number 15-1447-RBR, except when expressly stated that the reference is made to the main case, case number 10-28935-RBR.

[2] Plaintiff insists that an interim fee award is required under three cases; however, this Court is unpersuaded as the cases are easily distinguishable because there is no fee-shifting statute or express statutory authorization, and Defendants adamantly contest Plaintiff's entitlement to attorney's fees. Avera v. Sec'y of HHS, 515 F.3d 1343, 1352 (Fed. Cir. 2008) (denying an award of interim fees under a fee-shifting statute); Bradley v. Richmond Sch. Bd., 416 U.S. 696, 709, 724, 94 S. Ct. 2006 (1974) (granting an interim fee award because a provision of the Education Amendments Act of 1972 expressly authorized the award under a fee-shifting statute) Triple Five of Minn., Inc. v. Simon, No. 99-1894 (PAM/RLE), 2005 U.S. Dist. LEXIS 39841, *27-29 (D. Minn. Dec. 23, 2005) (finding, in the court's discretion, that an interim fee award was appropriate where entitlement to attorney's fees was uncontested).

1) whether Plaintiff is entitled to attorney's fees;

2) if Plaintiff is entitled to attorney's fees, then to what amount is Plaintiff entitled;

3) if Plaintiff is entitled to attorney's fees, whether the attorney's fees must be reasonable; and

4) if Plaintiff is entitled to attorney's fees, which of the defendant(s) is liable for payment of the attorney's fees and in what amount.

Further, the Court hesitates to approve a distribution to Plaintiff at this time because it violates section 726 of the Bankruptcy Code. First, the remaining cash held by the Trustee is property of the Debtor's estate because it is an "interest in property that the estate acquire[d] after the commencement of the case." 11 U.S.C. § 541(a)(7). Section 726 limits distribution of property of the estate to unsecured claimants with "allowed" claims. Here, Plaintiff's first allowed claim was paid in full in the amount of $203,193.57, pursuant to court order entered on January 31, 2017. [D.E. 987 at 2, Main Case]. At this time, the Court has not issued a ruling either allowing or disallowing Plaintiff's second claim for $20,000,001.00. *See* [D.E. 1002, Main Case]. Second, the claims reconciliation process is not yet complete, and a distribution to Plaintiff would violate the hierarchy contained in § 726. Under § 726, all allowed priority claims under § 507 must be paid before allowed unsecured claims, and all allowed timely-filed unsecured claims must be paid prior to allowed late-filed claims. Here, Plaintiff's allowed claim was paid in full, but Plaintiff's second claim – which is untimely and yet to be determined as allowed or disallowed – cannot have priority over potential administrative claims of the Trustee and his professionals under § 507. Thus, it is premature to distribute property of the estate to Plaintiff until the priority claims have been paid – regardless of the Court's subordination of Chrispus' claim to Plaintiff's claim, which has already been ordered by the Court. [D.E. 987, Main Case].

Accordingly, it is

**ORDERED** that the Motion [D.E. 187] is **DENIED** without prejudice.


###

*The Clerk shall furnish copies of this Order to all parties of record.*

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-11666

————————————————

D.C. Docket Nos. 0:12-cv-61483-KMW; 10-28935-BKC-RBR

In re
GLOBAL ENERGIES, LLC,

Debtor.

————————————————

JOSEPH G. WORTLEY,

Interested Party - Appellant,

versus

CHRISPUS VENTURE CAPITAL, LLC,

Petitioning Creditor - Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(August 15, 2014)

Before FAY, Circuit Judge, and HODGES* and HUCK,** District Judges.

PER CURIAM:

———————————————

  * Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of
Florida, sitting by designation.
  ** Honorable Paul C. Huck, United States District Judge for the Southern District of
Florida, sitting by designation.

Joseph G. Wortley appeals the district court's judgment affirming the bankruptcy court's summary denial of his motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure.   Wortley asserts that, under Rule 60(b), new evidence wrongfully withheld by opposing parties, misrepresentations made by opposing parties, or both, entitled him to relief from the bankruptcy court's earlier denial of his motion to dismiss the involuntary bankruptcy petition filed by Chrispus Venture Capital, LLC.

## I.

Wortley, James Juranitch, and Richard Tarrant shared ownership in Global Energies, LLC before its bankruptcy.   Wortley and Juranitch personally owned their stakes, while Tarrant held his through Chrispus, the appellee, in which he had a 93% ownership interest.   The three partners formed Global to market a plasma technology that Juranitch had developed.   In mid-2010, business disagreements undermined that partnership and resulted in Tarrant and Juranitch's developing a plan to wrest Wortley's interest in Global from him by having Chrispus file an involuntary bankruptcy petition against Global.[1]   That plan was hatched, or at least captured, in emails exchanged between Tarrant, Juranitch, and Chrispus's

---

[1] "Although bankruptcy cases often are commenced on the debtor's own initiative, Section 303 of the Bankruptcy Code allows creditors in some instances to hale a debtor into bankruptcy court by filing an involuntary petition." Trusted Net Media Holdings, LLC v. Morrison Agency, Inc. (In re Trusted Net Media Holdings, LLC), 550 F.3d 1035, 1040 (11th Cir. 2008) (en banc) (internal quotation marks omitted).

bankruptcy attorney, Chad Pugatch, in June 2010 (the "June 17–19 emails").

Writing to Tarrant on June 17, two weeks before Chrispus's bankruptcy petition

was filed, Juranitch said:

> The following is my humble attempt at presenting a strategy for
> Global Energies/Plasma Power starting next week.  If you and Ron
> [Roberts, Chrispus's primary officer,] agree with the memo, I
> recommend we have Chad Pugatch review it, and add his insight.  The
> plan is:
>
> 1. [Tarrant] communicates with [Wortley] on Tuesday when he is
> back, and requests a response on the offer that [Tarrant] extended
> Sunday night, which expired last Tuesday.  [Tarrant] gives [Wortley]
> until the end of the business day.
>
> 2. If a meaningful response is received [Tarrant] and [Juranitch] start
> negotiating . . . .  A two[-]day window is given to [Wortley] for a
> completed agreement.
>
> 3. If no meaningful response is received from [Wortley], Chrispus
> Ventures files for "Debtor in Possession" rights under Chapter 11 law
> on Wednesday. . . .
>
>      . . . .
>
> 6. . . .  Finally the [new company, Plasma Power LLC] may have to
> stand up to a legal battle from [Wortley] and needs to dot its I's and
> cross its T's. . . .
>
> 7. I am not clear how the Debtor in Possession eradicates the $200k
> note to [Wortley] and how [Wortley's] stock is dissolved.  If this is
> accomplished in a bidding war to buy the complete assets of Global
> including the patents by its debtors than [sic] that is clear.  If on the
> other hand the Debtor in Possession is to dissolve the company as an
> end game then we need to start spinning Plasma Power at this time.  It
> might also become Global Plasma Power etc.  I think we need to have
> this memo reviewed and a conference call with [Pugatch] to fill in the
> blanks at this point.

Wortley's Mot. for Reh'g. for Newly Discovered Evidence (hereinafter "Wortley's Mot. for Reh'g"), Ex. D at 2.  Tarrant replied: "I agree in general . . . .  I suggest you and [Roberts] pursue this strategy."  Wortley's Mot. for Reh'g, Ex. F at 5.  On June 19, Juranitch sent the plan to Pugatch who reviewed it and scheduled a time to discuss it with Juranitch, Roberts, and Tarrant.  No agreement with Wortley was reached, and Chrispus filed an involuntary bankruptcy petition against Global on July 1, 2010.

Wortley took no initial action to oppose the bankruptcy petition and even approved the appointment of a trustee.  He later began to suspect collusion by Tarrant and Juranitch, particularly when Chrispus showed interest in bidding on Global's assets at the bankruptcy sale.   Acting on those suspicions, Wortley moved under 11 U.S.C. § 1112(b) to dismiss the bankruptcy petition as having been filed in bad faith.[2]  The bankruptcy court held an emergency evidentiary hearing; at that point, Wortley could proffer only circumstantial evidence in support of his motion.  Chrispus had not turned over the June 17–19 emails, despite Wortley's request for all documents containing communications about Global

_____

[2] Under 11 U.S.C. § 1112(b), a bankruptcy court may dismiss a case for "cause," <u>Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)</u>, 749 F.2d 670, 674 (11th Cir. 1984); "cause" includes filing a petition in bad faith, <u>Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)</u>, 849 F.2d 1393, 1394 (11th Cir. 1988).

between Juranitch, Tarrant, and Pugatch.[3]  Pugatch, a recipient of some of the June 17–19 emails, represented to the bankruptcy court that "all responsive documents" had been produced.  Wortley's Mot. for Reh'g, Ex. H.  He asserted no privilege that would have allowed Chrispus to withhold the missing emails or put Wortley on notice that the emails existed.

Weakening Wortley's case further was the fact that Tarrant and Juranitch both gave sworn testimony denying their plan to file an involuntary bankruptcy petition.   When asked under oath whether he had "any conversations with Juranitch about filing an involuntary [bankruptcy]," Tarrant answered "no." Tarrant Dep. at 53.  Juranitch similarly testified that he had not learned of Chrispus's plan to file an involuntary bankruptcy petition until "shortly after they filed it or right when they were going to do it."  Juranitch Dep. at 103.   Pugatch, who is a partner in what Wortley admits is a "respected Ft. Lauderdale bankruptcy firm," Appellants's Br. at 24, lent his weight to those statements before the

---

[3] In addition to being relevant to Wortley's claim, the June 17–19 emails were covered by the description of at least two types of documents that he requested:

> 1. All Documents and correspondence between Chrispus and James Juranitch which relate to the Debtor.  This request specifically includes correspondence between [Pugatch] and Juranitch, Tarrant and Juranitch, and Roberts and Juranitch.

> 2. All Documents and correspondence between Chrispus and James Juranitch which relate to Plasma Power LLC.  This request specifically includes correspondence between [Pugatch] and Juranitch, Tarrant and Juranitch, and Roberts and Juranitch.

Wortley's Mot. for Reh'g, Ex. G at 8.

5

bankruptcy court, saying "[t]hroughout the entire process, representatives of

Chrispus . . . [had] the stated purpose of trying to salvage [Global] . . . all with the

goal of saving the monetary investment," Tr. of Evidentiary Hr'g (Nov. 10,

2010) at 62-63. Pugatch, of course, knew better. He knew Juranitch and Tarrant

sought to "eradicate[]" Wortley's promissory note and "dissolve[]" his stock.

Wortley's Mot. for Reh'g, Ex. D at 2. With no direct evidence for his claim,

Wortley asked to withdraw his motion to dismiss, and the bankruptcy court granted

that request without prejudice. Between the time when Wortley filed that motion

and withdrew it, the trustee sold Global's assets to Chrispus; after the motion to

dismiss was withdrawn, the bankruptcy court approved the sale.

About a year later, Wortley renewed his motion to dismiss the bankruptcy

case based on new evidence. He had identified emails between Tarrant and

Juranitch that appeared to show that they had colluded to do business without him

before filing for bankruptcy. Those emails were not the ones from June 17–19,

however, because those were still being withheld from Wortley, despite his earlier

discovery requests. Like the evidence that Wortley had proffered earlier, the new

emails, to which Wortley did have access, only circumstantially supported the

claim that Chrispus had filed the involuntary bankruptcy petition in bad faith.

Finding the evidence to be insufficient to support Wortley's claims, the bankruptcy court dismissed his motion with prejudice.[4]

Around that same time, in related state-court litigation, Wortley finally obtained the June 17–19 emails appearing to show both that Juranitch and Tarrant colluded in filing for involuntary bankruptcy and that they had testified falsely about that plan in their earlier depositions.  Notably, the emails were produced not by Pugatch—who had received and known of them—but by the attorney who was defending Tarrant and the others against Wortley's state-law claims.  Wortley then filed a Rule 60(b) motion for relief in the bankruptcy court based on those newly discovered emails.  The bankruptcy court summarily denied that motion and decided that no remedy was available to Wortley.   As grounds for that denial, the court noted that Wortley's evidence of bad faith "doesn't change anything," the issue already had been raised, the "bankruptcy is done,"  "Wortley had his day in court," and, even if Chrispus had improperly withheld evidence from Wortley, it would not matter because "[Wortley] knew that [Juranitch, Tarrant, Roberts, and Pugatch] were all talking."  Tr. of Hr'g on Mot. to Reconsider (May 24, 2012) at 10, 18, 22.  On appeal, the district court affirmed and reasoned Wortley's new

---

[4] Wortley appealed the denial of his second motion to dismiss to the district court.  That appeal later was dismissed, apparently because of his failure to file a brief timely.  Wortley notes that an unopposed motion for enlargement of time was pending at the time of the dismissal.  Regardless, the outcome of that appeal or Wortley's other abandoned appeals does not impact our decision.

evidence was insufficient to warrant Rule 60(b) relief.   Wortley appeals the

judgment of the district court.

II.

As the second court to review the judgment of the bankruptcy court, we

review it independently of the district court.   Senior Transeastern Lenders v.

Official Comm. of Unsecured Creditors (In re TOUSA, Inc.), 680 F.3d 1298, 1310

(11th Cir. 2012).  We review the bankruptcy court's denial of a motion for relief

from judgment under Rule 60(b) for abuse of discretion.  See Frederick v. Kirby

Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000).   If the bankruptcy court

"has made a clear error of judgment, or has applied the wrong legal standard," we

will conclude that it has abused its discretion in denying a Rule 60(b) motion.

See Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir.

2005) (per curiam).  Wortley cites two grounds on which he was entitled to relief

under Rule 60(b): first, under Rule 60(b)(2), he had discovered new evidence of the

bad-faith filing; second, under Rule 60(b)(3), he was entitled to relief from the

judgment as a result of fraud, misrepresentation, or misconduct by Chrispus.

Regarding Rule 60(b)(2), Wortley needed to demonstrate that (1) the new evidence

was discovered after the judgment was entered, (2) he had exercised due diligence

in discovering that evidence, (3) the evidence was not merely cumulative or

impeaching, (4) the evidence was material, and (5) the evidence was likely to

8

produce a different result.  See Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003); Branca v. Sec. Benefit Life Ins. Co., 789 F.2d 1511, 1512 (11th Cir. 1986) (per curiam).  Wortley's motion satisfied each of those criteria.

The bankruptcy court reached the opposite conclusion by, at least in part, applying the wrong legal standard to Wortley's Rule 60(b)(2) motion.  Instead of considering whether the June 17–19 emails were new evidence, the court asked whether Wortley had presented a new issue in his Rule 60(b)(2) motion.  Because Wortley previously had suspected bad faith by Chrispus and had raised that issue in his motions to dismiss, the court held that the June 17–19 emails suggesting collusion did not warrant Rule 60(b)(2) relief.  In the court's words, Wortley "had his day in court."  Tr. of Hr'g on Mot. to Reconsider (May 24, 2012) at 22.  But parties who request relief under Rule 60(b)(2) are not barred from it simply because they rely on issues that had been litigated earlier.  In fact, in the context of Rule 60(b)(2) motions, that is commonplace.   See, e.g., Branca, 789 F.2d 1511 (granting Rule 60(b)(2) relief, where the movant offered new evidence on the previously litigated issue of whether an insured man had died); Alpern v. UtiliCorp United, Inc., 84 F.3d 1525 (8th Cir. 1996) (same, where the previously litigated issue was whether a company had failed to make required disclosures); Estate of Kraus v. Comm'r, 875 F.2d 597 (7th Cir. 1989) (same, where the previously

9

litigated issue was whether a drafting mistake had occurred in a trust document);

Chilson v. Metro. Transit Auth., 796 F.2d 69 (5th Cir. 1986) (same, where the

previously litigated issue was whether an employee had been unlawfully

discharged).  What matters is whether the movant presents new evidence to support

the motion, in addition to satisfying the other criteria of Rule 60(b)(2).  See

Waddell, 329 F.3d at 1309.   By applying the wrong legal standard to Wortley's

Rule 60(b)(2) motion, the bankruptcy court abused its discretion.  See Ameritas

Variable Life Ins. Co., 411 F.3d at 1330.

Even if the bankruptcy court's statements can be construed as applying the

standards of Rule 60(b)(2), it made clear errors of judgment and abused its

discretion in applying those standards.   See id. (holding that a court abuses its

discretion by making clear errors of judgment).  For example, the bankruptcy

court's statement that Wortley "knew that [Juranitch, Pugatch, Roberts, and

Tarrant] were all talking" could be construed as a finding that Wortley's evidence

was not new, that Wortley failed to exercise due diligence in discovering the June

17–19 emails showing those discussions, that the emails were cumulative or

impeaching, or some combination of those three things.  Tr. of Hr'g on Mot. to

Reconsider (May 24, 2012) at 22.   The court's statement that Wortley's evidence

"doesn't change anything" could likewise be construed as a finding that the

evidence was neither material nor likely to produce a different result in the bankruptcy.  Id.

Under any of those possible interpretations of the bankruptcy court's statements, however, the court committed clear errors of judgment.  First, Wortley discovered the June 17–19 emails in March 2012, well after the bankruptcy court denied with prejudice his motion to dismiss the bankruptcy petition.    Second, before March 2012, Wortley did exercise due diligence in trying to discover the messages and had asked for precisely those types of emails in his initial document request to Chrispus.  Although the email messages were indisputably responsive to that request, relevant to Wortley's claims, and nonprivileged, Chrispus did not produce them.  Because they were not listed on a privilege log, Wortley did not know the messages existed.  He tried to obtain the same evidence through depositions of Juranitch and Tarrant, but both men denied any plan to file a bankruptcy petition in bad faith, sworn denials that now appear to be blatantly false.

All the more troubling is that Pugatch, a sworn officer of the court, actively obstructed Wortley's efforts to obtain evidence of the plan to file for involuntary bankruptcy.  He and his associate falsely responded to Wortley's November 2010 discovery request by saying that "all non-privileged documents responsive to [Wortley's requests]" had been produced.  Wortley's Mot. for

Reh'g, Ex. H at 3.  Clearly, some significant non-privileged and responsive

documents had been withheld.    Pugatch also represented Tarrant at the deposition,

where Tarrant falsely testified that he had had no conversations with Juranitch

about filing an involuntary bankruptcy petition.  Having participated in the June

17–19 email discussions about the involuntary bankruptcy petition, Pugatch knew

that testimony was false, yet he did nothing to correct it or to remedy the earlier

failure to produce the June 17–19 email messages.    The rules regulating attorney

conduct of the Florida Bar required him to do so.    See R. Reg. Fla. Bar 4-3.3(a)(2)

("A lawyer shall not knowingly fail to disclose a material fact to a tribunal when

disclosure is necessary to avoid assisting a criminal or fraudulent act by the

client."); id. at (a)(4) ("A lawyer shall not knowingly offer evidence that the lawyer

knows to be false.  A lawyer may not offer testimony that the lawyer knows to be

false in the form of a narrative unless so ordered by the tribunal.  If a lawyer, the

lawyer's client, or a witness called by the lawyer has offered material evidence and

the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial

measures, including, if necessary, disclosure to the tribunal.  A lawyer may refuse

to offer evidence that the lawyer reasonably believes is false.").    In sum, the

parties, who had the evidence that Wortley needed to substantiate his claims,

blocked his access to it and deliberately prevented him from finding it.   Wortley

eventually obtained the emails from a different attorney as part of another lawsuit,

but that does not diminish Wortley's due diligence or his adversaries' apparent malfeasance in the litigation that led to this appeal.

Third, far from being cumulative or impeaching, the June 17–19 emails were direct evidence of the plan and intent of Tarrant and Juranitch to have Chrispus file a bankruptcy petition in bad faith.    While this court has not settled on one test for determining when a bankruptcy petition is filed in bad faith, the June 17–19 emails show bad faith by Chrispus under all three recognized tests: the improper purpose test, the improper use test, and the test modeled on Rule 9011 of the Federal Rules of Bankruptcy Procedure.[5]  See Gen. Trading, Inc. v.

_____

[5] Under the improper purpose test, "bad faith exists where the filing of the petition was motivated by ill will, malice or the purpose of embarrassing or harassing the debtor." Gen. Trading Inc., 119 F.3d at 1501.  Filing an involuntary bankruptcy petition deliberately to gain advantage in a business dispute is considered an improper purpose, see Basin Elec. Power Coop. v. Midwest Processing Co., 769 F.2d 483, 486–87 (8th Cir. 1985), as is filing an involuntary bankruptcy petition in order to take control of a corporation or its assets, see In re Better Care, Ltd., 97 B.R. 405, 412 (Bankr. N.D. Ill. 1989).  The June 17–19 emails indicate that Chrispus had both of those purposes in mind, when it filed its involuntary bankruptcy petition.

Under the improper use test, bad faith exists when a creditor uses a bankruptcy proceeding to accomplish objectives not intended by the Bankruptcy Code, such as taking over a debtor corporation and its assets.  See Gen. Trading Inc., 119 F.3d at 1501; In re Better Care, Ltd., 97 B.R. at 411–12.  As the June 17–19 emails show, Chrispus used the Bankruptcy Code in that very way.

Finally, under the test modeled on Rule 9011 of the Federal Rules of Bankruptcy Procedure, bad faith exists, where a filing party (1) fails to make a reasonable inquiry into the facts and the law before filing and (2) files the petition for an improper purpose.  Gen. Trading Inc., 119 F.3d at 1502.  The first prong, reasonable inquiry, is an objective one.  See id.  Based on the record before us, Chrispus did not make an objectively reasonable inquiry into the law and facts before filing its petition.  A reasonable party would not believe that the Bankruptcy Code permits it to use a bankruptcy proceeding to rid itself of business partners.  See Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.), 235 F.3d 375, 379 (8th Cir. 2000) (noting that the Bankruptcy Code's purpose is "'to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders'") (quoting H.R. Rep. No. 595 (1975), reprinted in 1978 U.S.C.C.A.N.

Yale Materials Handling Corp., 119 F.3d 1485, 1501-02 (11th Cir. 1997). In fact, it would be clear error to interpret the emails as showing anything other than that Tarrant and Juranitch conspired to have Chrispus file the bankruptcy petition in bad faith.

Fourth, the June17–19 emails were material to Wortley's claims.  As we have explained, the messages clearly show that Tarrant, Juranitch, and Chrispus acted in bad faith in filing the involuntary bankruptcy petition.  Fifth, the June 17–19 emails were likely to produce a different result on Wortley's motion to dismiss the bankruptcy petition.  Under 11 U.S.C. § 1112(b), a bankruptcy court is permitted to "dismiss a case for 'cause,'" Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984), including for bad faith on the part of the filer, Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.), 849 F.2d 1393, 1394 (11th Cir. 1988).  On that basis, the bankruptcy court could and should have dismissed Chrispus's petition for bad faith had the truth been known.   Alternatively, the bankruptcy court could have revisited Global's sale, reversed the determination that the sale occurred in good faith, and voided the sale.  See 11 U.S.C. § 363(m); Fed. R. Civ. P. 60(b)(5),

---

6179).  The second prong, improper purpose, is also satisfied by Chrispus's filing.  As noted, Chrispus filed the involuntary bankruptcy petition for the improper purpose of prevailing over Wortley in a business dispute and taking control of Global's assets while eliminating Wortley's interests.  See Gen. Trading Inc., 119 F.3d at 1501.

(d)(3).  By clearly erring in its application of Rule 60(b)(2) under the facts of this case, the bankruptcy court abused its discretion.[6]  See Ameritas Variable Life Ins. Co., 411 F.3d at 1330.

On remand, the bankruptcy court shall grant Wortley's Rule 60(b)(2) motion and vacate its order approving the sale of Global's assets to Chrispus. This should be without prejudice to any innocent third parties, whose rights and interests are derived and dependent upon the sale.  The bankruptcy court then shall conduct any hearings necessary in the exercise of all its powers at law or in equity and issue appropriate orders or writs, including without limitation orders requiring an accounting and disgorgement, orders imposing sanctions, writs of garnishment and attachment, and the entry of judgments to ensure that Chrispus, Juranitch, Tarrant, and Pugatch do not profit from their misconduct and abuse of the bankruptcy process.  The bankruptcy court shall vacate the sanctions imposed upon Wortley and ensure that he is fully compensated for any and all damages, including awarding Wortley attorneys' fees and costs.  The only reason that this court does not impose any of these remedies is that Chrispus, Juranitch, Tarrant, and Pugatch have not had an appropriate hearing, which will be conducted before the bankruptcy court.

---

[6] Having concluded that the bankruptcy court abused its discretion in denying Wortley's Rule 60(b)(2) motion, we need not reach his alternative contention that the bankruptcy court abused its discretion in denying his request for relief under Rule 60(b)(3).

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 15, 2014

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 13-11666-CC
Case Style: Joseph Wortley v. Chrispus Venture Capital, LLC
District Court Docket No: 0:12-cv-61483-KMW
Secondary Case Number: 10-28935-BKC-RBR

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellee.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, CC at (404) 335-6177.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs

**UNITED STATES COURT OF APPEALS**
**For the Eleventh Circuit**

_____

No. 13-11666

_____

District Court Docket Nos.
0:12-cv-61483-KMW; 10-28935-BKC-RBR

GLOBAL ENERGIES, LLC,

                                        Debtor,

_____

JOSEPH G. WORTLEY,

                                        Plaintiff - Appellant,

versus

CHRISPUS VENTURE CAPITAL, LLC,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: August 15, 2014
For the Court: John Ley, Clerk of Court
By: Jeff R. Patch

Issued as Mandate
October 10, 2014

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11666-CC

_____

GLOBAL ENERGIES, LLC,

Debtor.

_____

JOSEPH G. WORTLEY,

Plaintiff - Appellant,

versus

CHRISPUS VENTURE CAPITAL, LLC,

Defendant - Appellee.

--------------------------
On Appeal from the United States District Court
for the Southern District of Florida
--------------------------

BEFORE: FAY, Circuit Judge, and HODGES* and HUCK,** District Judges.

BY THE COURT:

Before this Court is Appellant's "Motion for Award of Appellate Attorneys' Fees and

Remand for Determination of Amount," requesting that the Court find Appellant to be statutorily

entitled, pursuant to 11 U.S.C. § 303 and/or Bankruptcy Rule 9011, to attorney's fees incurred in

this Court and in the district court and to remand the matter of the amounts to be awarded.

_____

* Honorable Wm. Terrell Hodges, United States District Judge for the Middle District
of Florida, sitting be designation.

**Honorable Paul C. Huck, United States District Judge for the Southern District of
Florida, sitting by designation.

Also before this Court is Appellant's "Reply in Support of Motion for Award of Appellate Attorney's Fees…," which is also construed as an alternative motion to transfer, pursuant to Eleventh Circuit Rule 39-2(d), to the district court for its consideration of the attorney's fee amounts to be awarded.   See 11th Cir. R. 39-2(d).

Pursuant to 11th Cir. R. 39-2(d), this Court hereby transfers the issues of Appellant's statutory entitlement to appellate attorney's fees incurred in this Court and the reasonable amount, if any, to be awarded.

Appellant's request as to his entitlement to attorney's fees incurred in the district court and the amount to be awarded is DENIED WITHOUT PREJUDICE to his right to seek this relief in the district court.

Appellant's alternate request for remand is DENIED AS MOOT.